UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

LIUDMILA A. STOROZHENKO,

      Debtor.

_____/

Case No. 11-57443

Chapter 7

Judge Thomas J. Tucker

**OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION**

This case is before the Court on a motion filed by David Findling entitled "Motion for Reconsideration of Opinion[, etc.]," filed September 20, 2011 (Docket # 56, the "Motion"), which this Court construes as a motion for partial reconsideration of, for partial relief from, and to alter or amend in part, the Court's September 16, 2011 Order Granting in Part, and Denying in Part, Debtor's Motion for Sanctions (Docket # 54).

The Court has reviewed and considered the Motion, and the corrected brief that Findling filed on September 21, 2011 in support of his Motion (Docket # 60). The Court finds that the Motion fails to demonstrate a palpable defect by which the Court and the parties have been misled, and that a different disposition of the case must result from a correction thereof. *See* Local Rule 9024-1(a)(3).

Further, the Court concludes that the allegations and arguments in the Motion do not establish any valid ground for relief under Fed.R.Civ.P. 60(b), FedR.Bankr.P. 9024, or under Fed.R.Civ.P. 59(e), FedR.Bankr.P. 9023.

In addition, the Court notes the following. First, Findling waived the arguments he now makes in the Motion, because Findling failed to make these arguments before the Court granted Debtor's sanctions motion in part, in the September 16, 2011 Order. *See, e.g., In re DSC, Ltd.*,

486 F.3d 940, 947 (6th Cir. 2007)(citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) for the proposition that "objections raised for the first time in a reconsideration motion are deemed to have been waived"); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 346, 374 (6th Cir. 1998)("[a] motion under [Fed.R.Civ.P.] 59(e) is not an opportunity to reargue a case" and should not be used "to raise arguments which could, and should, have been made before judgment issued").

Second, even if not waived, Findling's arguments, as to why Findling contends this Court has committed error, are without merit.

Findling argues first that the "criminal restitution" he requested in the Criminal Contempt Motion is provided in the Michigan statutes as a form of punishment available for criminal contempt. Findling points out that the Michigan criminal contempt statute, Mich.Comp.Laws § 600.1715, gives the state court discretion to place an individual found guilty of criminal contempt "on probation in the manner provided for persons guilty of a misdemeanor as provided in chapter XI of the code of criminal procedure, . . . MCL 77.1 to 771.14a." Findling then points out that if the state court does choose to place the individual on probation, it *must*, as a condition of such probation, order "restitution to the victim," citing Mich.Comp.Laws § 771.3(1)(e), and it *may*, as a condition of such probation, also order the individual to pay "costs," including "expenses specifically incurred in prosecuting the defendant," citing Mich.Comp.Laws §§ 771.3(2)(c) and 771.3(5).

To summarize this, if Findling's analysis of these Michigan statutes is correct, then it means that under the Michigan criminal contempt statute, Mich.Comp.Laws § 600.1715, the state court may, in its discretion, choose to place a person guilty of criminal contempt on

probation. And if the state court chooses such probation, it *must* order the individual to pay restitution as a condition of probation, and it *may* order the individual to pay the expenses of her prosecution.

Findling then argues that because of this, his request for "criminal restitution" as part of the relief in his Criminal Contempt Motion must be regarded as a *criminal* contempt sanction, not a *civil* contempt sanction, for purposes of the 11 U.S.C. § 362(b)(1) "criminal action or proceeding" exception to the automatic stay.

Findling's argument is without merit. First, Findling's Criminal Contempt Motion did not request that the Debtor be placed on probation, even though probation is one of the possible remedies under the criminal contempt statute, Mich.Comp.Laws § 600.1715(1). Findling requested the maximum 93-day imprisonment, the maximum $7,500 fine, and the "criminal restitution," but he did not request probation.

Second, under the Sixth Circuit's decision in the *Bayshore* case, even if state law makes restitution available as a possible remedy for both criminal contempt and civil contempt, as Findling says Michigan law does, that is not determinative of whether the restitution remedy is to be deemed a criminal contempt sanction or a civil contempt sanction, and therefore whether the "criminal action or proceeding" exception to the automatic stay applies. As the Court explained in its September 16, 2011 opinion, even if state law defines or labels restitution as a form of punishment or sanction for criminal contempt, such a label is not determinative under *Bayshore*. *See* Opinion, Docket # 53, at 6. What matters is this: if the fine or restitution is "payable to the complainant as compensation for damages caused by the contemnor's noncompliance," then the fine or restitution is deemed to be civil in nature, not criminal. *See* Opinion at 8, quoting

3

11-57443-tjt    Doc 66    Filed 09/23/11    Entered 09/23/11 17:55:23    Page 3 of 9

*Bayshore*, 934 F.2d at 1400-01, and Opinion at 10-11. And as this Court stated in its September 16 opinion,

> The relief requested in subpart (d) of Findling's contempt motion is civil, not criminal. There Findling requests that the Debtor be required to pay "criminal restitution" in the amount of $46,862.08 "together with Receiver's fees and costs incurred in the investigation of her contempt and the prosecution of same." . . . [T]his is not a criminal contempt sanction under the principles set forth in the *Bayshore* case. This sanction is clearly designed to be remedial and compensatory, and therefore is a civil contempt sanction, notwithstanding the "criminal restitution" label that Findling places on it. Monetary relief for contempt that is remedial, for the benefit of the complainant, and that is designed to compensate the injured complainant, is in the nature of civil contempt, rather than criminal contempt. *Bayshore*, 934 F.2d at 1400 (quoted above).
>
> Findling's request for his fees and costs incurred is obviously compensatory and remedial. The $46,862.08 amount requested by Findling as part of the "criminal restitution" relief is also compensatory — it is the exact amount alleged by Findling to have been received and retained by the Debtor in violation of the underlying state court orders.

(Opinion, Docket # 53, at 10-11 (footnote omitted)).

Thus, even if the Michigan criminal contempt statute, Mich.Comp.Laws § 600.1715(1), can be read to mean that "restitution to the victim" may be imposed, based on Mich.Comp.Laws § 771.3(1)(e), as a condition of any probation granted under § 600.1715(1) for criminal contempt, and even if Findling had requested such probation, the request in Findling's Criminal Contempt Motion for "criminal restitution" must be deemed to be relief that is civil in nature, not criminal, for purposes of the 11 U.S.C. § 362(b)(1) exception to the automatic stay.

In his Motion, Findling argues that by so ruling, and by entering the September 16 sanctions order against Findling, this Court improperly "enmeshes" itself into the state criminal

prosecution of the Debtor. Findling also argues that this Court is improperly preventing the state court from choosing to place the Debtor on probation for her criminal contempt, since under state law, according to Findling, any probation must include restitution as a condition of probation. Aside from the fact that Findling's Criminal Contempt Motion did not ask the state court to place Debtor on probation, Findling's arguments overlook the following points. First, it is the automatic stay imposed by a federal bankruptcy statute, 11 U.S.C. § 362(a), which currently limits what Findling can request and what the state court can order in response to the Debtor's alleged criminal contempt. That federal statute, as applied here, does not preclude the state court from placing the Debtor on probation, if the state court deems probation appropriate in its discretion under the Michigan criminal contempt statute. At most, that federal statute would, temporarily (*i.e.*, only until the automatic stay terminates under 11 U.S.C. § 362(c)),[1] prevent the

---

[1] Section 362(c) states, in pertinent part:

> (c) Except as provided in subsections (d), (e), (f), and (h) of this section--
>
> > (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;
> >
> > (2) **the stay of any other act under subsection (a) of this section continues until the earliest of--**
> >
> > > (A) the time the case is closed;
> > >
> > > (B) the time the case is dismissed; or
> > >
> > > (C) **if the case is a case under chapter 7** of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, **the time a discharge is granted or denied**;

11 U.S.C. § 362(c)(emphasis added).

state court from complying with the state statute that mandates restitution as a condition of probation (if that is even what Mich.Comp.Laws § 771.3(1)(e) mandates in the criminal contempt context). To this very limited extent, at most, the federal statute would preempt the state statute, under the Supremacy Clause of the United States Constitution.[2]

Second, Findling overlooks the limited duration of the automatic stay. The 11 U.S.C. § 362(a) automatic stay that currently prevents Findling from seeking restitution as one of the remedies for Debtor's alleged criminal contempt, and that currently prevents the state court from ordering such restitution, applies only for a limited time. This stay became effective when Debtor filed her bankruptcy petition, on June 23, 2011, and it will terminate at the earliest of the following times: when Debtor either obtains her bankruptcy discharge under 11 U.S.C. § 727(a) is denied a discharge under 11 U.S.C. § 727(a); or when and if Findling files an adversary proceeding and obtains a determination from this Court that Debtor's pre-petition debt to Findling is nondischargeable under one or more of the provisions of 11 U.S.C. § 523(a). *See* 11 U.S.C. § 362(c)(2), quoted in footnote 1 of this opinion; *see also* Opinion, Docket # 51, at 2 (discussing the Sixth Circuit's *Embry* decision). This could occur as early as October 12, 2011, because October 11, 2011 appears to be the deadline for any party to file a complaint objecting to

---

[2] The Supremacy Clause of the United States Constitution states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

the Debtor's discharge under § 727(a), and if no one does so by the deadline, Debtor's discharge will then be granted.[3]

Findling has alleged no reason whatsoever to believe that there is any particular deadline or urgency in prosecuting his Criminal Contempt Motion in the state court, or in prosecuting the restitution component of that motion. Given this, and given the limited duration of the automatic stay, Findling is simply wrong is asserting that this Court's enforcement of the automatic stay in this instance is materially interfering with the enforcement of state criminal law by the Michigan courts.

Finally, Findling cites, in support of his Motion, the Supreme Court's decision in *Kelly v. Robinson*, 479 U.S. 353 (1986).[4] Unlike this case, the *Kelley* case did not involve *any* of the following: (1) the bankruptcy automatic stay under 11 U.S.C. § 362(a); (2) the "criminal action or proceeding" exception to the automatic stay under 11 U.S.C. § 362(b)(1); (3) a contempt proceeding of any kind; (3) the post-petition commencement by a creditor of a criminal contempt proceeding against the bankruptcy debtor; or (4) a request for restitution by that creditor, as part of the post-petition criminal contempt motion. Rather, *Kelley* involved a bankruptcy debtor who had been convicted of larceny in a state court, based on her wrongful receipt of welfare benefits, and sentenced, all before she filed bankruptcy. As part of the criminal sentence, the state court suspended a three-year prison sentence and instead placed the debtor on probation for five years. One of the conditions of that probation was that the debtor had to make restitution to the state,

---

[3] To date, no one has filed an objection-to-discharge complaint against the Debtor.

[4] Findling did not bring the *Kelley* case to the Court's attention before it ruled on Debtor's sanctions motion. Findling cited *Kelley* for the first time in his reconsideration motion.

through monthly payments over the five-year period of her probation. After sentencing, the debtor filed Chapter 7 bankruptcy. The Supreme Court held that the debtor's restitution obligation to the state was nondischargeable under 11 U.S.C. § 523(a)(7), as a "fine, penalty, or forfeiture payable to or for the benefit of a governmental unit, and . . . not compensation for actual pecuniary loss." 479 U.S. at 361-63.

As noted above, *Kelley* had nothing to do with the automatic stay, or the § 362(b)(1) exception to the automatic stay, or contempt proceedings. And this case has nothing to do with the *dischargeability* of a restitution obligation that was imposed pre-petition as part of a criminal sentence by a state court. Findling appears to cite *Kelley* because the Supreme Court held that the restitution obligation in that case was "not compensation for actual pecuniary loss" within the meaning of the nondischargeability provision of § 523(a)(7). From this and from the Supreme Court's reasoning in *Kelley*, Findling argues, apparently, that this Court should find that the restitution Findling requested in his Criminal Contempt Motion was *not* "payable to the complainant as compensation for damages caused by the contemnor's noncompliance," in the words used by the Sixth Circuit in *Bayshore*, and therefore should be deemed criminal in nature, rather than civil, under *Bayshore*.

But cases decided after *Kelley* have not interpreted that decision to mean that all restitution obligations imposed in criminal cases are penal in nature, rather than compensatory. In *United States v. Asset*, 990 F.2d 208 (5th Cir. 1993),[5] for example, the United States Court of Appeals for the Fifth Circuit discussed *Kelley*, and observed that in *Kelley*, "the Supreme Court noted specifically that the reasoning behind its decision was its conclusion that the restitution

---

[5] *Asset* was not a bankruptcy case.

order at issue in that case, . . . was not 'for the benefit of the victim,' since the Connecticut statute under which the obligation was imposed 'did not require imposition of restitution in the amount of the harm caused [but] [i]nstead, . . . provide[d] for a flexible remedy tailored to the defendant's situation.'" 990 F.2d at 213 n.3 (citations omitted).  The Fifth Circuit distinguished *Kelley* in this respect, on the ground that in the case before it, the restitution obligation, which was contained in a plea agreement in a federal criminal case, "was obviously intended to benefit the victim of the defendant's crime." *Id.*  The Fifth Circuit went on to reason that "if the principal objective of the restitution payment is 'to restore the victim to his or her prior state of well-being,'. . . then the payment may be appropriately categorized as 'compensatory' rather than penal." *Id.* at 213 (citation omitted).

Under this reasoning, and under the principles of the Sixth Circuit's decision in *Bayshore* (a 1991 case decided after *Kelley*), Findling's request for "criminal restitution" was a remedy for contempt that was civil in nature, because it was compensatory rather than penal.  *See* Opinion, Docket # 53, at 8, 10-11.

For these reasons, the Court must deny Findling's Motion.  Accordingly,

IT IS ORDERED that the Motion (Docket # 56) is denied.

**Signed on September 23, 2011**  /s/ **Thomas J. Tucker**
**Thomas J. Tucker**
**United States Bankruptcy Judge**